**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| MONOLITHIC 3D<sup>TM</sup> INC., | § § § | Case No. 7:26-cv-190 |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| NVIDIA CORPORATION, | § § § | |
| Defendant. | § § § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff MonolithIC 3D<sup>TM</sup> Inc. ("Monolithic" or "Plaintiff") for its Complaint against Nvidia Corporation ("Nvidia" or "Defendant"), alleges as follows:

**THE PARTIES**

1.      Monolithic is a limited liability company, organized and existing under the laws of the State of Texas, with a principal place of business located at 825 Watter's Creek Boulevard, Building M, Suite 250, Allen, Texas 75013.

2.      Upon information and belief, Nvidia is a corporation organized and existing under the laws of the State of Delaware and has a place of business located at 11001 Lakeline Blvd Suite #100 Bldg. 2, Austin, Texas 78717. Nvidia conducts business in Texas and has a registered agent in Texas where it may be served with process via its registered agent, Corporation Service Company d/b/a/ CSC-Lawyers Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

4.      This Court has specific and personal jurisdiction over Nvidia consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Nvidia has sufficient minimum contacts with the forum because Nvidia has physical locations and transacts substantial business in the State of Texas and in this Judicial District. Further, Nvidia has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, and as alleged more particularly below.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Nvidia is registered to do business in Texas and, upon information and belief, Nvidia has transacted business in this Judicial District, has committed acts of direct and indirect infringement in this Judicial District, and has a regular and established place of business in this Judicial District as set forth above. Nvidia is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. On information and belief, Nvidia through its own acts and/or through the acts of others, makes, uses, sells, offers to sell, and/or imports infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one. Nvidia has a regular and established place of business in this District, including at least a facility located at 11001 Lakeline Blvd Suite #100 Bldg. 2, Austin, Texas 78717.

**PATENTS-IN-SUIT**

6.　　On February 24, 2026, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,564,006 (the "'006 Patent") entitled "3D Semiconductor Device and Structure with Memory Cells and Multiple Metal Layers." A true and correct copy of the '006 Patent is attached hereto as Exhibit A.

7.　　On July 15, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,362,330 (the "'330 Patent") entitled "3D Semiconductor Device and Structure with Connection Paths." A true and correct copy of the '330 Patent is attached hereto as Exhibit B.

8.　　On March 11, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,250,830 (the "'830 Patent") entitled "3D Semiconductor Memory Devices and Structures." A true and correct copy of the '830 Patent is attached hereto as Exhibit C.

9.　　On August 26, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,400,961 (the "'961 Patent") entitled "3D Semiconductor Device and Structure with Metal Layers." A true and correct copy of the '961 Patent is attached hereto as Exhibit D.

10.　　Monolithic is the sole and exclusive owner of all right, title, and interest to and in the '006 Patent, the '330 Patent, the '830 Patent, and the '961 Patent (collectively the "Patents-in-Suit" or "Asserted Patents"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Monolithic also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit, and to seek injunctive relief as appropriate under the law.

11. Monolithic has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. Upon information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

**FACTUAL ALLEGATIONS**

12. Monolithic is an innovator in computer memory, logic, and electro-optics. Monolithic was originally founded and incorporated in 2009 under the name NuPGA by Zvi Or-Bach, the President and CEO of Monolithic. NuPGA's mission was to develop programmable logic technology with density, speed, and power approaching application-specific integrated circuits ("ASICs"). While developing improved field-programmable gate array ("FPGA") technology, the NuPGA team discovered a path for practical monolithic 3D integrated circuits ("IC"). Recognizing that this breakthrough and its many related innovations represented a paradigm shift for the entire semiconductor industry, Mr. Or-Bach changed the company strategy to focus on monolithic 3D-ICs and renamed the company to MonolithIC 3D$^{TM}$ Inc.

13. Monolithic's business involves researching, developing, and licensing technology, including DRAM technology. Monolithic has more than 300 U.S. patents related to multi-level IC technology, including over 30 U.S. patents related to high bandwidth memory ("HBM") technology.

14. The Patents-in-Suit generally relate to semiconductor memory devices and fabrication methods. The technology of the Patents-in-Suit was variously developed by Zvi Or-Bach, Deepak C. Sekar, Jin-Woo Han, and Brian Cronquist of Monolithic. Some embodiments of the invention provide 3D stacked NAND integrated circuits and high bandwidth memory integrated circuits. Nvidia uses this technology, for example, in the high bandwidth memory of the Accused Products.

4

15.    Nvidia has infringed and is continuing to infringe one or more of the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import, graphical processing units, SoCs, and processors comprising HBM products (collectively, the "Accused Products"), including, but not limited to, the Nvidia GH100 and GH200 Grace Hopper Superchips since March 2020.

16.    The Accused Products (e.g., the Nvidia GH200 Grace Hopper Superchip) comprise HBM products including, for example, the SK Hynix H5UG7HMD83X020R HBM3. For example, "[a]ccording to Nvidia, the new edition of the GH200 is the world's first processor to include HBM3e memory. . . . HBM3e is manufactured by SK hynix Inc. using a 10-nanometer process." https://siliconangle.com/2023/08/08/nvidia-debuts-upgraded-gh200-grace-hopper-chip-high-speed-hbm3e-memory/. "SK hynix has already 'sold out' this year's HBM volumes and is said to be the first among the three memory companies to finish preparations for mass production of HBM4 (6th generation) and is negotiating volumes with Nvidia." https://biz.chosun.com/en/en-it/2025/10/27/UKZGKNEMINF3DPPGXFLKS766OU/.

17.    As shown in the image below, the NVIDIA GH200 (chip on the left) comprises the

NVIDIA GH100 chip (chip on the right), which is the GPU component of the NVIDIA GH200:



*NVIDIA Grace Hopper Superchip*
*©Yole Group 2025*

*NVIDIA Hopper GPU 200 Overview*
*©Yole Group 2025*

18.     The NVIDIA GH100 chip (part no. GH100-888K-A1), in turn, comprises six SK Hynix HBM products identified as "HBM 16GB" in the image below, one of which is H5UG7HMD83X020R:



7

19.     The NVIDIA GH200 chip is used in products such as Quanta Computer Inc.'s QuantaGrid S74G-2U server, which is also known as the Quanta S74G-2U Grace Hopper Superchip System[1]:



20.     Furthermore, "[t]he SK Hynix H5VG7HMD83X020R [*sic*] was found inside NVIDIA's [GH 200] Grace Hopper Superchip used in the use in Quanta Computer Inc's S74G-2U QuantaGrid server for artificial intelligence (AI) and high-performance computing (HPC) applications. The NVIDIA GH100-888K-A1 Hopper GPU . . . contain[s] six SK hynix 16 GB 4th generation HBM3 DRAM sub-packages from which the SK hynix H5VG7HMD83X020R [sic] die, manufactured using the SH hynix's D1z process, was extracted for analysis. . . ." https://www.techinsights.com/blog/sk-hynix-h5vg7hmd83x020r-d1z-16-gb-hbm3-dram-

---

[1] *See* https://go.qct.io/global-campaign/qct-cutting-edge-infrastructure-and-solution-powered-by-nvidiaen/ ("QuantaGrid S74G-2U is the NVIDIA Grace-Hopper Superchip server").

memory-floorplan-analysis. The die marking on the Nvidia GH100-888K-A1 Hopper GPU shows

that it contains the SK hynix H5UG7HMD83X020R:



21.    Upon information and belief, Nvidia has had knowledge and notice of the Asserted

Patents, and Nvidia's infringement thereof, from prior litigations at least as of November 26, 2025

(including *Monolithic 3D*[TM] *Inc. v. SK hynix Inc.*, Case No. 2:25-cv-1167 (E.D. Tex.), *Monolithic*

*3D*[TM] *Inc. v. SK hynix Inc.*, Case No. 2:26-cv-0145 (E.D. Tex.), and *In the Matter of Certain NAND*

*and DRAM Memory Chips*, Inv. No. 337-TA-1492 (USITC) (collectively, the "Hynix Cases")),

precisely because those litigations accused certain products (*e.g.*, SK hynix HBM product

H5UG7HMD83X020R) of infringement that are included within the Accused Products, as noted

above, and mentioned the exemplary GH100 and GH200 Accused Products by name.

## COUNT I
**(Infringement of the '006 Patent)**

22.     Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

23.     Monolithic has not licensed or otherwise authorized Nvidia to make, use, offer for sale, sell, or import any products that embody the inventions of the '006 Patent.

24.     Nvidia has and continues to directly infringe the '006 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '006 Patent. These products include at least the Accused Products, such as the Nvidia GH200 Grace Hopper Superchip, which comprises the NVIDIA GH100 chip, which in turn comprises the H5UG7HMD83X020R HBM3 high bandwidth memory.





PRODUCTS ▶ DRAM ▶ HBM ▶ **HBM3E**                                                          ✕

**Parts Detail**

HBM HBM3

# H5UG7HMD83X020R

| Density | 16Gb |
|---|---|
| KGSD Density | 128Gb |
| Speed | 5.6Gbps |
| Organization | x1024 |
| Voltage (VDD / VDDQ) | 1.1V / 1.1V |

2

25.     For example, Nvidia has and continues to directly infringe at least Claim 1 of the '006 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer, said first level comprising first transistors, wherein each of said first transistors comprises a single crystal channel; a first metal layer, said first metal layer is disposed above or below said first level; a second metal layer overlaying said first metal layer; a second level comprising a plurality of second transistors, said second level overlaying said first level; a third level comprising a plurality of third transistors, said third level overlaying said second level; a fourth level comprising a plurality of fourth transistors, said fourth level overlaying said third level, wherein said second level comprises a plurality of first memory cells, wherein each of said plurality of first memory cells comprises at least one of said second transistors, wherein said fourth level comprises a plurality of second memory cells, wherein each of said plurality of second

---

[2] https://product.skhynix.com/products/dram/hbm/hbm3e.go

memory cells comprises at least one of said fourth transistors, wherein said first level comprises memory control circuits, wherein second memory cells comprise at least four memory arrays, wherein each of said four memory arrays are independently controlled, wherein said first level, said second level, said third level, and said fourth level each comprise a dielectric electrical isolation layer disposed in-between and comprise vias and/or thru-layer vias for vertical connection, and wherein at least one of said second transistors comprises a metal gate.

26.    Each Accused Product comprises a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer, said first level comprising first transistors, wherein each of said first transistors comprises a single crystal channel. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.





27.    Each Accused Product comprises a first metal layer, said first metal layer is disposed above or below said first level; and a second metal layer overlaying said first metal layer. The diagram below demonstrates these elements in the H5UG7HMD83X020R.



28.     Each Accused Product comprises a second level comprising a plurality of second transistors, said second level overlaying said first level. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.





29.    Each Accused Product comprises a third level comprising a plurality of third transistors, said third level overlaying said second level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



30.    Each Accused Product comprises a fourth level comprising a plurality of fourth transistors, said fourth level overlaying said third level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



31.    Each Accused Product comprises a device wherein said second level comprises a plurality of first memory cells, wherein each of said plurality of first memory cells comprises at least one of said second transistors. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



32.    Each Accused Product comprises a device wherein said fourth level comprises a plurality of second memory cells, and wherein each of said plurality of second memory cells comprises at least one of said fourth transistors. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



33.     Each Accused Product comprises a device wherein said first level comprises memory control circuits. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



**said first level**

**memory control circuits**

Part of HBM Logic Die
(Delayered, Optical)

Data flow to the entire HBM DRAM stack flows through the **HBM logic die**. Therefore, **the memory control circuits** on **the HBM logic die control memory addressing and data flow to the memory cells**.

HBM Logic Die CMOS Control Circuit
(Delayered, SEM)

34.     Each Accused Product comprises a device wherein second memory cells comprise at least four memory arrays, and wherein each of said four memory arrays are independently controlled. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



High Bandwidth Memory (HBM3) DRAM, JESD238B.01 (Revision of JESD238B, March 2025), JEDEC SOLID STATE TECHNOLOGY ASSOCIATION

35.    Each Accused Product comprises a device wherein said first level, said second level, said third level, and said fourth level each comprise a dielectric electrical isolation layer disposed in-between and comprise vias and/or thru-layer vias for vertical connection. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



Detail of Upper Portion of TSV
(SEM)

21



36.    Each Accused Product comprises a device wherein at least one of said second transistors comprises a metal gate. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



37.    Nvidia indirectly infringes one or more claims of the '006 Patent by knowingly and intentionally inducing others, including Nvidia's customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Grace Hopper Superchips.

38.    Nvidia indirectly infringes one or more claims of the '006 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Nvidia's customers and end-users, in this District and elsewhere in the United States. For example, Nvidia's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '006 Patent. Nvidia induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Nvidia's inducement, Nvidia's customers and end-users use Accused Products in a way Nvidia intends and directly infringe the '006 Patent. Nvidia performs these affirmative acts with knowledge of the '006 Patent and with intent, or willful blindness, that the induced acts directly infringe the '006 Patent, at least as of the date of the Hynix Cases.

39.    Nvidia indirectly infringes one or more claims of the '006 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Nvidia's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use

23

and manufacture of the Accused Products, such that the '006 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '006 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nvidia to be especially made or adapted for use in the infringement of the '006 Patent. Nvidia performs these affirmative acts with knowledge of the '006 Patent and with intent, or willful blindness, that it causes the direct infringement of the '006 Patent, at least as of the date of the Hynix Cases.

40.    Nvidia's infringement of the '006 Patent is and has been willful. Nvidia has had knowledge and notice of the Asserted Patents, and Nvidia's infringement thereof, from the Hynix Cases at least as of November 26, 2025, precisely because those litigations accused certain products (*e.g.*, SK Hynix HBM product H5UG7HMD83X020R) of infringement that are included within the Accused Products and mentioned the exemplary GH100 and GH200 Accused Products by name.

41.    Monolithic has suffered damages as a result of Nvidia's direct, indirect, and willful infringement of the '006 Patent in an amount to be proved at trial.

42.    Monolithic has suffered, and will continue to suffer, irreparable harm as a result of Nvidia's infringement of the '006 Patent, for which there is no adequate remedy at law, unless Nvidia's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '330 Patent)

43.    Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

44.    Monolithic has not licensed or otherwise authorized Nvidia to make, use, offer for sale, sell, or import any products that embody the inventions of the '330 Patent.

45.    Nvidia has and continues to directly infringe the '330 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '330 Patent. These products include at least the Accused Products, such as the Nvidia GH200 Grace Hopper Superchip, which comprises the NVIDIA GH100 chip, which in turn comprises the H5UG7HMD83X020R HBM3 high bandwidth memory.







46.      For example, Nvidia has and continues to directly infringe at least Claim 8 of the '330 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level, wherein said first level comprises a first layer, said first layer comprising first transistors, and wherein said first level comprises a second layer, said second layer comprising first interconnections; a second level overlaying said first level, wherein said second level comprises a plurality of second transistors, wherein said second level comprises a third layer, said third layer comprising first conductive lines; a third level overlaying said second level, wherein said third level comprises a plurality of third transistors, wherein said third level comprises a fourth layer, said fourth layer comprising second conductive lines; and a plurality of connection paths, wherein said plurality of connection paths provides electrical connections from a plurality of said first transistors to said plurality of third transistors, and wherein said first level comprises at least one PLL circuit.

47.      Each Accused Product comprises a 3D semiconductor device, the device comprising: a first level, wherein said first level comprises a first layer, said first layer comprising first transistors, and wherein said first level comprises a second layer, said second layer comprising

---

[3] https://product.skhynix.com/products/dram/hbm/hbm3e.go

first interconnections. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



HBM Logic Die Cross-section
(SEM)

48.    Each Accused Product comprises a second level overlaying said first level, wherein said second level comprises a plurality of second transistors, wherein said second level comprises a third layer, said third layer comprising first conductive lines. The diagrams below demonstrate these elements in the H5UG7HMD83X020R.



49.    Each Accused Product comprises a third level overlaying said second level, wherein said third level comprises a plurality of third transistors, wherein said third level comprises a fourth layer, said fourth layer comprising second conductive lines. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



29

50.     Each Accused Product comprises a plurality of connection paths, wherein said plurality of connection paths provides electrical connections from a plurality of said first transistors to said plurality of third transistors. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



51.    Each Accused Product comprises a device wherein said first level comprises at least one PLL circuit. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



Figure 10 — High Level Block Diagram Example of Clocking Scheme

High Bandwidth Memory (HBM3) DRAM , JESD238B.01 (Revision of JESD238B, March 2025) April 2025,JEDEC SOLID STATE TECHNOLOGY ASSOCIATION

For at least the HBM3 requirements for signal integrity and clocking, the SK Hynix **HBM controller** will employ **PLL circuits.**

52.    Nvidia indirectly infringes one or more claims of the '330 Patent by knowingly and intentionally inducing others, including Nvidia's customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Grace Hopper Superchips.

53.    Nvidia indirectly infringes one or more claims of the '330 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Nvidia's customers and end-users, in this District and elsewhere in the United States. For example, Nvidia's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the

inventions claimed in the '330 Patent. Nvidia induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Nvidia's inducement, Nvidia's customers and end-users use Accused Products in a way Nvidia intends and directly infringe the '330 Patent. Nvidia performs these affirmative acts with knowledge of the '330 Patent and with intent, or willful blindness, that the induced acts directly infringe the '330 Patent, at least as of the date of the Hynix Cases.

54.    Nvidia indirectly infringes one or more claims of the '330 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Nvidia's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '330 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '330 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nvidia to be especially made or adapted for use in the infringement of the '330 Patent. Nvidia performs these affirmative acts with knowledge of the '330 Patent and with intent, or willful blindness, that it causes the direct infringement of the '330 Patent, at least as of the date of the Hynix Cases.

55.    Nvidia's infringement of the '330 Patent is and has been willful. Nvidia has had knowledge and notice of the Asserted Patents, and Nvidia's infringement thereof, from the Hynix

Cases at least as of November 26, 2025, precisely because those litigations accused certain products (*e.g.*, SK Hynix HBM product H5UG7HMD83X020R) of infringement that are included within the Accused Products and mentioned the exemplary GH100 and GH200 Accused Products by name.

56.     Monolithic has suffered damages as a result of Nvidia's direct, indirect, and willful infringement of the '330 Patent in an amount to be proved at trial.

57.     Monolithic has suffered, and will continue to suffer, irreparable harm as a result of Nvidia's infringement of the '330 Patent, for which there is no adequate remedy at law, unless Nvidia's infringement is enjoined by this Court.

**COUNT III**
**(Infringement of the '830 Patent)**

58.     Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

59.     Monolithic has not licensed or otherwise authorized Nvidia to make, use, offer for sale, sell, or import any products that embody the inventions of the '830 Patent.

60.     Nvidia has and continues to directly infringe the '830 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '830 Patent. These products include at least the Accused Products, such as the Nvidia GH200 Grace Hopper Superchip, which comprises the NVIDIA GH100 chip, which in turn comprises the H5UG7HMD83X020R HBM3 high bandwidth memory.

33

Parts Detail

HBM HBM3

### H5UG7HMD83X020R

| Density | 16Gb |
| --- | --- |
| KGSD Density | 128Gb |
| Speed | 5.6Gbps |
| Organization | x1024 |
| Voltage (VDD / VDDQ) | 1.1V / 1.1V |

---

[4] https://product.skhynix.com/products/dram/hbm/hbm3e.go

61.    For example, Nvidia has and continues to directly infringe at least Claim 4 of the '830 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer and a memory control circuit, said memory control circuit comprising a plurality of first transistors; a first metal layer overlaying said first single crystal layer; a second metal layer overlaying said first metal layer; a plurality of second transistors disposed atop said second metal layer; a third metal layer disposed atop said plurality of second transistors; a memory array comprising word-lines and memory cells, wherein said memory array comprises at least four memory mini arrays, wherein at least one of said plurality of second transistors comprises a metal gate, wherein each of said memory cells comprises at least one of said plurality of second transistors, and wherein said memory control circuit comprises at least one Look Up Table circuit ("LUT"); and an upper level disposed atop said third metal layer, wherein said upper level comprises a mono-crystalline silicon layer.

62.    Each Accused Product comprises a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer and a memory control circuit, said memory control circuit comprising a plurality of first transistors. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



HBM Stack Cross-section (Optical)



HBM Logic Die Cross-section
(SEM)



HBM Logic Die CMOS Control Circuit
(Delayered, SEM)

Part of HBM Logic Die
(Delayered, Optical)

63.     Each Accused Product comprises a first metal layer overlaying said first single crystal layer; a second metal layer overlaying said first metal layer; a plurality of second transistors disposed atop said second metal layer. The diagrams below demonstrate these elements in the H5UG7HMD83X020R.



64.     Each Accused Product comprises a third metal layer disposed atop said plurality of second transistors. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



65.    Each Accused Product comprises a memory array comprising word-lines and memory cells. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.





66.    Each Accused Product comprises a device wherein said memory array comprises at least four memory mini arrays. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



67.     Each Accused Product comprises a device wherein at least one of said plurality of second transistors comprises a metal gate. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



HBM DRAM Die Cross-section
(Circuitry detail, SEM)

68.    Each Accused Product comprises a device wherein each of said memory cells comprises at least one of said plurality of second transistors. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



HBM DRAM Die Cross-section
(Circuitry detail, SEM)

43

69.    Each Accused Product comprises a device wherein said memory control circuit comprises at least one Look Up Table circuit ("LUT"). For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.

To comply with the JEDEC HBM specifications, the SK Hynix HBM **memory control circuit includes at least the LUT circuits for interconnect redundancy mapping.**

said memory control circuit



Part of HBM Logic Die
(Delayered, Optical)

JEDEC Standard No. 238B.01
Page 95

**6.7    Interconnect Redundancy Remapping**

The HBM3 DRAM supports interconnect lane remapping to help improve SIP assembly yield and recover functionality of the HBM3 stack. The SOFT_LANE_REPAIR and HARD_LANE_REPAIR instructions are used to perform lane remapping. Lane remapping is independent for each channel.

SOFT_LANE_REPAIR and HARD_LANE_REPAIR instructions can only be issued as part of the device initialization and before normal memory operation has commenced, e.g., before the CK clock has started to toggle.

The HBM DRAM can be programmed to retain the remapped lane information even when power is completely removed from the HBM stack.

High Bandwidth Memory (HBM3) DRAM , JESD238B.01
 (Revision of JESD238B, March 2025) April 2025,JEDEC SOLID STATE TECHNOLOGY ASSOCIATION

44

70.    Each Accused Product comprises an upper level disposed atop said third metal layer, wherein said upper level comprises a mono-crystalline silicon layer. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



71.    Nvidia indirectly infringes one or more claims of the '830 Patent by knowingly and intentionally inducing others, including Nvidia's customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Grace Hopper Superchips.

72.    Nvidia indirectly infringes one or more claims of the '830 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Nvidia's customers and end-users, in this District and elsewhere in the United States. For example, Nvidia's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '830 Patent. Nvidia induces this direct infringement through its

affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Nvidia's inducement, Nvidia's customers and end-users use Accused Products in a way Nvidia intends and directly infringe the '830 Patent. Nvidia performs these affirmative acts with knowledge of the '830 Patent and with intent, or willful blindness, that the induced acts directly infringe the '830 Patent, at least as of the date of the Hynix Cases.

73. Nvidia indirectly infringes one or more claims of the '830 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Nvidia's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '830 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '830 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nvidia to be especially made or adapted for use in the infringement of the '830 Patent. Nvidia performs these affirmative acts with knowledge of the '830 Patent and with intent, or willful blindness, that it causes the direct infringement of the '830 Patent, at least as of the date of the Hynix Cases.

74. Nvidia's infringement of the '830 Patent is and has been willful. Nvidia has had knowledge and notice of the Asserted Patents, and Nvidia's infringement thereof, from the Hynix Cases at least as of November 26, 2025, precisely because those litigations accused certain

products (*e.g.*, SK Hynix HBM product H5UG7HMD83X020R) of infringement that are included within the Accused Products and mentioned the exemplary GH100 and GH200 Accused Products by name.

75.     Monolithic has suffered damages as a result of Nvidia's direct, indirect, and willful infringement of the '830 Patent in an amount to be proved at trial.

76.     Monolithic has suffered, and will continue to suffer, irreparable harm as a result of Nvidia's infringement of the '830 Patent, for which there is no adequate remedy at law, unless Nvidia's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '961 Patent)

77.     Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

78.     Monolithic has not licensed or otherwise authorized Nvidia to make, use, offer for sale, sell, or import any products that embody the inventions of the '961 Patent.

79.     Nvidia has and continues to directly infringe the '961 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '961 Patent. These products include at least the Accused Products, such as the Nvidia GH200 Grace Hopper Superchip, which comprises the NVIDIA GH100 chip, which in turn comprises the H5UG7HMD83X020R HBM3 high bandwidth memory.







5 https://product.skhynix.com/products/dram/hbm/hbm3e.go.

80.    For example, Nvidia has and continues to directly infringe at least Claim 1 of the '961 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising: a first silicon layer comprising a first single crystal silicon layer; a plurality of first transistors each comprising a single-crystal channel; a first metal layer connected to said plurality of first transistors; a second metal layer connected to said first metal layer; a third metal layer connected to said second metal layer; a second level comprising a plurality of second transistors, said second level is disposed over said first level; a third level comprising a plurality of third transistors, said third level is disposed over said second level; a fourth metal layer disposed over said third level; a fifth metal layer disposed over said fourth metal layer; and a via disposed through said second level, wherein at least one of said plurality of second transistors comprises a metal gate, wherein said device comprises at least one temperature sensor, and wherein at least one element within at least one of said plurality of second transistors has been processed independently of said plurality of third transistors.

81.    Each Accused Product comprises a 3D semiconductor device, the device comprising a first level comprising: a first silicon layer comprising a first single crystal silicon layer and a plurality of first transistors each comprising a single-crystal channel. For example, the diagrams below demonstrate these elements in the H5UG7HMD83X020R.



82.    Each Accused Product comprises a first metal layer connected to said plurality of first transistors; a second metal layer connected to said first metal layer; and a third metal layer connected to said second metal layer. The diagram below demonstrates these elements in the H5UG7HMD83X020R.



83.     Each Accused Product comprises a second level comprising a plurality of second transistors, said second level is disposed over said first level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



84.    Each Accused Product comprises a third level comprising a plurality of third transistors, said third level is disposed over said second level. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



85.    Each Accused Product comprises a fourth metal layer disposed over said third level; and a fifth metal layer disposed over said fourth metal layer. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



86.    Each Accused Product comprises a via disposed through said second level. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



87.    Each Accused Product comprises a device wherein at least one of said plurality of second transistors comprises a metal gate. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



HBM DRAM Die Cross-section
(Circuitry detail, SEM)

88.    Each Accused Product comprises a device wherein said device comprises at least one temperature sensor. For example, the diagram below demonstrates this element in the H5UG7HMD83X020R.



89.     Each Accused Product comprises a device wherein at least one element within at least one of said plurality of second transistors has been processed independently of said plurality of third transistors. For example, the diagram below demonstrates these elements in the H5UG7HMD83X020R.



HBM Cross-section (Exemplary TSV Stacking, Optical)

90.     Each Accused Product comprises a system wherein said third level comprises a second array of memory cells. For example, the aforementioned third level comprises a second array of memory cells in the same manner and configuration as the aforementioned second level discussed above.

91.     Each Accused Product comprises a system wherein formation of said plurality of second transistors comprises a first lithography step, and wherein formation of said plurality of third transistors comprises a second lithography step. For example, the manufacturing of each layer

of the HBM DRAM stack comprises identical, separate lithography steps for each die. Each lithography step forms a plurality of transistors in each DRAM die as shown above.

92.     Nvidia indirectly infringes one or more claims of the '961 Patent by knowingly and intentionally inducing others, including Nvidia's customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Grace Hopper Superchips.

93.     Nvidia indirectly infringes one or more claims of the '961 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Nvidia's customers and end-users, in this District and elsewhere in the United States. For example, Nvidia's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '961 Patent. Nvidia induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Nvidia's inducement, Nvidia's customers and end-users use Accused Products in a way Nvidia intends and directly infringe the '961 Patent. Nvidia performs these affirmative acts with knowledge of the '961 Patent and with intent, or willful blindness, that the induced acts directly infringe the '961 Patent, at least as of the date of the Hynix Cases.

94.     Nvidia indirectly infringes one or more claims of the '961 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Nvidia's affirmative acts of selling and

offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '961 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '961 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Nvidia to be especially made or adapted for use in the infringement of the '961 Patent. Nvidia performs these affirmative acts with knowledge of the '961 Patent and with intent, or willful blindness, that it causes the direct infringement of the '961 Patent, at least as of the date of the Hynix Cases.

95.     Nvidia's infringement of the '961 Patent is and has been willful. Nvidia has had knowledge and notice of the Asserted Patents, and Nvidia's infringement thereof, from the Hynix Cases at least as of November 26, 2025, precisely because those litigations accused certain products (*e.g.*, SK Hynix HBM product H5UG7HMD83X020R) of infringement that are included within the Accused Products and mentioned the exemplary GH100 and GH200 Accused Products by name.

96.     Monolithic has suffered damages as a result of Nvidia's direct, indirect, and willful infringement of the '961 Patent in an amount to be proved at trial.

97.     Monolithic has suffered, and will continue to suffer, irreparable harm as a result of Nvidia's infringement of the '961 Patent, for which there is no adequate remedy at law, unless Nvidia's infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Monolithic hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Monolithic prays for relief against Nvidia as follows:

a.       Entry of judgment declaring that Nvidia has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b.       Entry of judgment declaring that Nvidia's infringement of the Patents-in-Suit is willful;

c.       An order awarding damages sufficient to compensate Monolithic for Nvidia's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs;

d.       Entry of judgment declaring that this case is exceptional and awarding Monolithic its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

e.       An accounting for acts of infringement;

f.       Such other equitable relief which may be requested and to which Monolithic is entitled; and

g.       Such other and further relief as the Court deems just and proper.

Dated: May 11, 2026                    Respectfully submitted,


                                       */s/ Ryan F. Oliver*
                                       Peter Lambrianakos (*Pro Hac Vice to be filed)*
                                       NY Bar No. 2894392
                                       Email: plambrianakos@frlip.com
                                       Vincent J. Rubino, III (*Pro Hac Vice to be filed*)
                                       NY Bar No. 4557435
                                       Email: vrubino@frlip.com
                                       Ryan F. Oliver
                                       TX Bar No. 24132132
                                       Email: roliver@frlip.com
                                       **Fabricant, Rubino & Lambrianakos LLP**
                                       411 Theodore Fremd Avenue
                                       Suite 206 South
                                       Rye, New York 10580
                                       Telephone: (212) 257-5797
                                       Facsimile: (212) 257-5796

                                       ***ATTORNEYS FOR PLAINTIFF
                                       MONOLITHIC 3D™ INC.***